124 F.3d 204
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joyce M. PLESSINGER, Plaintiff-Appellant,
v.
John J. CALLAHAN, Acting Commissioner of Social Security,
Defendant-Appellee.
 No. 96-3763.
 United States Court of Appeals, Seventh Circuit.
 June 30, 1997.
 
 Appeal from the United States District Court for the Northern for the Northern District of Indiana, of Indiana, New Albany NA 94-46-C R/H; Gene E. Brooks, Judge.
 
 ORDER
 
 1
 Before CUDAHY, COFFEY, and EASTERBROOK, C.J.
 
 
 2
 Joyce M. Plessinger appeals the district court's affirmance of the commissioner's denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Administrative Law Judge (ALI), whose decision was adopted by the commissioner upon the appeals' council's denial of review, found that Plessinger was not disabled within the meaning of the Act and the applicable regulations. The AI determined that Plessinger did not meet one of the impairments listed in the regulations (whereby she would automatically be deemed disabled). Having made this conclusion, the ALJ determined the Plessinger was capable of performing her past work and therefore was not disabled. We now reverse and remand to the commissioner.
 
 I.
 
 3
 Plessinger worked at three jobs prior to incurring her alleged disability. She worked as a materials handler, a powder bag sewer, and as a drill press operator. She alleges disability due to several impairments, both mental and physical. Primarily, she complains that she suffers from depression and also from gastrointestinal problems associated with projectile vomiting.
 
 
 4
 There were several pieces of medical evidence in the record before the ALJ. Doctor Edna Pretila, one of Plessinger's treating physicians, submitted notes and records going back to 1988. These notes show that in 1992, Plessinger was experiencing vomiting and was diagnosed with a hiatal hernia. The doctor's notes indicate complaints of excessive vomiting as early as 1988. The notes and records also note the diagnosis of and treatment for depression, anxiety and panic attacks.
 
 
 5
 Kevin Conlee, a doctor of psychology, provided a detailed report of his findings regarding Plessinger's mental and emotional state. This report was based upon a battery of tests that Doctor Conlee performed. He concluded that depression and psychosomatic complaints were apt to be present and that she fit the profile of an individual who would "lack[ ] the wherewithal to stand up to every day stress and strains...." He also noted, however, that Plessinger "was able to follow directions, to communicate in an understandable manner, and .... was able to attend to the tasks at hand as directed." Ultimately, he concluded that "[the] results of the formal psychological assessment would provide strong substantiating documentation for the incidence of an active somatoform disorder, resulting in marked restriction of activities of daily living." Moreover, he concluded that "the prognosis of the patient's improving to sufficient levels as to enable her ... to return to successful competitive employment is poor, for at least the next 2 year period."
 
 
 6
 William Freeman, also a psychologist, conducted a "Claimant Interview" with Plessinger and submitted a written report. He diagnosed her as having Dysthymia that was under symptomatic control with medication. He concluded that this condition was mild with no thought disturbing features. He summed up his report by noting "[t]his claimant is capable of managing benefits...."
 
 
 7
 A vocational expert testified before the ALJ. He testified that if he were to uncritically accept Plessinger's testimony regarding her condition, he would conclude that she could not return to her past work or perform any other available job.
 
 
 8
 Plessinger herself testified before the ALJ. She stated that she had constant pain in her back, neck, and shoulders, and weakness in her arms. She also stated the she experiences sudden bouts of vomiting, which occur several times in some weeks but not at all in other weeks. She also indicated that she does work around the house and goes out to shop. In addition, the parties made a joint motion to supplement the administrative record with a reconstruction of her testimony (based upon the notes of the ALJ) that had been omitted from the original transcript. In this portion of her testimony, Plessinger stated that she spent only 15 to 20 minutes with Doctor Freeman and felt inhibited in speaking with him because she was able to hear what was going on in his office while she was in the waiting room prior to seeing him.
 
 
 9
 After taking testimony and examining the reports in the record, the ALJ denied Plessinger's request for benefits, concluding that she was not disabled. The appeals council declined Plessinger's request for review, thereby making the ALJ's decision the final decision of the commissioner. 20 C.F.R. § 404.981. Plessinger then filed an action for judicial review in the district court. 42 U.S.C. § 405(g). The district judge affirmed the commissioner's denial of benefits and entered judgment against Plessinger. She then filed a timely notice of appeal.
 
 II.
 
 10
 In order to receive disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).
 
 
 11
 The applicable regulations provide for a five-step evaluation to determine whether the claimant is disabled. 20 C.F.R. § 404.1520; Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir.1984). The first and second questions are whether the claimant is unemployed and has a severe impairment. The commissioner concedes that the answer to both these questions is yes, thereby requiring analysis at step three. The third question is whether the claimant's impairment meets or exceeds one of the impairments listed in the regulations. If the answer to this question is yes, then the claimant is deemed disabled and eligible for benefits. If the answer is no, the claimant might still be disabled; that determination requires answering questions four and five. In the present case the ALJ answered question three in the negative. Plessinger claims that this was in error-that she met one of the listed impairments; the commissioner disagrees.
 
 
 12
 After having concluded that Plessinger did not meet a listed impairment, the ALI applied question four, asking whether she was able to perform her past occupation. He concluded that the answer to this question was yes (which ended the inquiry and resulted in a finding that Plessinger was not disabled). Plessinger assigns the question four determination as an alternative basis for error. She argues that even if she did not meet a listed impairment (which would automatically qualify her for benefits), her condition was such that she could not return to her former employment. As a negative answer at step four requires the fact finder to engage in the step five analysis, which requires inquiry as to whether there is any other job in the economy that the claimant could perform, Plessinger asserted that the answer to this question was also no, which would result in a finding of disability and eligibility for benefits.
 
 III.
 
 13
 This court's review of the ALJ's findings is deferential. (Of course this case is on appeal from the district court. But as this court and the district court undertake the same level of review of the ALJ, this court effectively reviews the ALJ's decision anew.) The Commissioner's findings (which are the ALJ's findings in this case) are conclusive if supported by substantial evidence. Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir.1997). Therefore, this court examines the entire record to see if this standard was met and does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. Id.
 
 
 14
 We conclude that the AL's determination that Plessinger was not disabled at step three was supported by substantial evidence. However, we conclude that his findings at step four were insufficient with regard to her ability to perform her prior work not withstanding her assertion that she suffers from projectile vomiting, and therefore remand for additional proceedings.
 
 
 15
 Plessinger claimed that she was disabled at step three because she met listing 12.07 in 20 C.F.R. § 404, Subpart P, Appendix 1. This listing provides the criteria for a finding that the claimant has a somatoform disorder (basically a disorder where the patient exhibits physical symptoms with no physiological explanation). She argues that Doctor Conlee's report provided sufficient evidence for such a finding and that the ALJ's conclusion that the evidence in this report was outweighed by Doctor Freeman's report was not supported by substantial evidence. She claims that Doctor Freeman's report was based exclusively on her self-reporting and that he did no testing that would reveal somatoform disorder, whereas Doctor Conlee ran a full battery of tests. In addition, she claims that the fact that her session with Doctor Freeman lasted only 15 to 20 minutes and that she felt inhibited in speaking to him undermines the reliability of his findings.
 
 
 16
 The ALJ was presented with conflicting evidence: Doctor Conlee's report, which if accepted in full would provide support for a finding that Plessinger met listing 12.07, and Doctor Freeman's report, which was a sufficient ground for finding that she did not. Although Plessinger has a sound argument that Doctor Conlee's report was based upon a more thorough and rigorous testing method, the ALJ's conclusion was supported by substantial evidence. The ALJ noted the problems that Plessinger cited with Doctor Freeman's report and explained why they did not make the report unreliable. He then explained why he found his report to be more reliable than Doctor Conlee's, the former being consistent with the evidence contained in reports submitted by two of Plessinger's treating physicians, Doctors Pretila and Rogers, and Plessinger's own testimony regarding her daily activities. With this evidence before him, the ALJ's had the authority and discretion to resolve the issues of conflicting evidence and reach a conclusion at step three. See Wolfe v. Shalala, 997 F.2d 321, 326 (7th Cir.1993) (holding that a court may not reweigh evidence or reconsider an ALJ's credibility determinations). In short, there was sufficient evidence to support the AU's decision (and arguably sufficient evidence to support the alternative position). In such a case, this court must affirm the ALJ's determination.
 
 
 17
 Having properly concluded that Plessinger did not meet a listed impairment, the ALJ was next required to determine whether she had the Residual Functional Capacity (RFC) to perform her prior work.[1] He concluded that Plessinger had the RFC to perform medium work and therefore could perform her former job as a sewing machine operator, which the vocational expert testified was considered light work.
 
 
 18
 The ALJ's analysis in reaching this conclusion was flawed. Plessinger testified that she suffered from a particular condition, projectile vomiting. The vocational expert testified that if she in fact suffered from that condition she could not perform any work. At least in theory ALJ had the discretion to reject either Plessinger's or the vocational expert's testimony (although as we explain below there was a firmer basis for rejecting the former than rejecting the latter). However, he did neither of these and yet concluded that she could perform medium work.
 
 
 19
 If the ALJ did not believe Plessinger's testimony he was required to indicate that he was so doing and give an explanation. He did note the medical evidence that indicated that she suffered from mild reflux, and noted that she had gained weight during the period in question. He also stated that her physician reported that she vomited 10 minutes after eating. The ALJ, however, did not explain the significance of this evidence in light of her testimony that she vomited frequently and unpredictably. It is possible that he found her testimony not to be credible in light of the other evidence. Such a conclusion might appear to be supported by the record. However, in that her testimony if believed would render her disabled, he could not simply ignore it and only rely upon the objective medical evidence. See Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir.1996) ("If the administrative law judge believed the medical reports that found that [the claimant] has enough strength to work and disbelieved [the claimant's own testimony], this would compel the denial of the application for benefits. We cannot say that this combination of belief and disbelief would be unreasonable but we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); Heron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994) ("Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence."); see also SEC v. Chenery Corp., 318 U.S. 80 (1943) (holding that an administrative order must be reviewed only upon the ground upon which the record shows the order was based). If on the other hand he thought that she could perform her past work even if she experienced frequent spells of projectile vomiting, his conclusion would not be supported by substantial evidence in light of the vocational expert's uncontradicted testimony that, if her description of her condition were to be believed, she could perform no work. Either way, the AL's failure to specify the basis for his conclusion prevents us from engaging in meaningful appellate review.
 
 
 20
 At oral argument, counsel for the commissioner pointed to the objective evidence as supporting a finding that her condition was not as serious as she indicated. This argument seeks to have this court act as the finder of fact, a role committed to the ALJ. Therefore, a remand is in order.
 
 
 21
 On remand, if the ALJ concludes that Plessinger can perform her past work, then there will be no need to examine step five of the applicable analysis; she will be deemed not eligible for disability benefits. If, however, upon reconsideration he concludes that Plessinger is not able to perform her former job, he will have to perform the step-five analysis and consider whether any other job exists in the economy that she can perform notwithstanding her impairment.
 
 REVERSED AND REMANDED. REVERSED AND
 
 
 [1]
 Residual Functional Capacity refers to what a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)