Christine RAKE, Plaintiff,

v.

John J. CALLAHAN, Acting Commissioner of Social Security, Defendant.

No. 96 C 7828.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 21, 1997.

**1182**

Leonard David Litwin, Bernard Davis & Associates, Chicago, IL, for Plaintiff.

Ramune Rita Kelecius, Asst. U.S. Atty., Chicago, IL, for Defendant.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court are cross-motions for summary judgment. For the reasons that follow, the court grants the motion of Defendant Commissioner of Social Security ("Commissioner") and denies the motion of Plaintiff Christine Rake ("Rake").

## I. BACKGROUND

Rake brings this action pursuant to Section 205 of the Social Security Act ("Act"), 42 U.S.C. § 405(g) (1994), for review of the Commissioner's decision, denying Rake Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Act. 42 U.S.C. §§ 416(i), 423, 1381 (1994).

Rake applied for DIB and SSI on September 14, and 21, 1993, respectively, for lower back pain, urinary incontinence, and numbness and tingling in her hands and feet. Rake alleges that she has been disabled since April 22, 1993. After her application and request for reconsideration was denied, Rake requested an administrative hearing.

On December 28, 1995, the Administrative Law Judge ("ALJ"), James A. Horn, denied her disability benefits. At the hearing, Rake was represented by counsel. The ALJ concluded that Rake's subjective complaints regarding her ailments were not supported by the objective evidence presented at the hearing. Although the ALJ found that Rake presented sufficient evidence to show a "degenerative disc disease," this impairment did not rise to the listing level of severity under 1.05(c) of 20 C.F.R. part 404, subpart P, appendix 1 (1996) ("listing") to qualify as a disability under the Act. The ALJ further determined that Rake had the residual functional capacity ("RFC") to perform work-related activities, with the exception of work involving lifting or carrying over twenty (20) pounds. From this determination, the ALJ concluded that Rake could perform her past work as a library clerk. Thus, the ALJ concluded that Rake was not disabled, and therefore, not entitled to disability benefits.

Rake subsequently filed a request for review with the Appeals Council. On October 9, 1996, the Appeals Council denied Rake's request for review of the ALJ's decision. Because Rake has exhausted her administrative remedies, Rake seeks further review in this court pursuant to 42 U.S.C. § 405(g).

## II. EVIDENCE BEFORE THE ALJ

Rake was born on December 27, 1950. Rake's most recent past employment was working as a library monitor or clerk. In this capacity, Rake's duties included shelving books, typing, filing, and taking in overdue books. Rake also walked around the library to ensure that the children adhered to library rules. At closing time, Rake checked all the rooms to make sure the doors were locked. According to her testimony, the job at the library entailed lifting or carrying up to twenty-five (25) pounds, sitting for three to

four hours, and standing for up to two hours during a normal workday.

Rake also held two other jobs prior to the library position. In one job, she worked as a housekeeper at Palos Community Hospital. This job required bending and stooping when she mopped and cleaned the hospital. Rake also worked at Howe Developmental Center where she dressed disabled persons and made beds.

Rake testified that in October 1992, she was injured while lifting a patient. In November 1992, Linda Kastner, trained in physical therapy, reported that Rake had visited her complaining of lower back pain which occasionally radiated down her right leg following prolonged walking. An MRI performed on November 20, 1992, revealed moderately severe degenerative disc disease at L4–L5 with mild spinal stenosis. The scan also indicated degenerative disc disease at L5–S1 and an "equivocal" small posterior mid-line protrusion of the intervertebral disc.

Dr. Albert Butler began treating Rake in January 1993 for a lumbar herniated disc at L5–S1 and lower back pain. As part of his treatment, Dr. Butler started Rake on a "conservative" treatment program and restricted her from lifting over ten pounds, and bending or twisting. Rake testified that she went to Dr. Butler ten times over the course of the following seven months. After an examination on July 22, 1993, Dr. Butler's report revealed no sensory or reflex loss, muscle atrophy, or loss of motion. Furthermore, the report noted that Rake was "full weight bearing" with no evidence of muscle spasm.

In October 1993, Dr. James J. Curran evaluated Rake and diagnosed her with carpel tunnel syndrome. Dr. Curran recommended further nerve conduction ("NCV") and electromyography ("EMG") testing, but Rake declined. All other laboratory and examination tests performed by Dr. Curran were negative. Rake also saw Dr. Charles Turk in October 1993, complaining of urinary incontinence. Rake claimed to have a prolapsed bladder which was causing her significant urinary incontinence and a frequent urgency to urinate. However, Dr. Turk's examination revealed nothing which

was consistent with Rake's complaints of urgency incontinence. Dr. Turk also ordered a cystoscopy which returned negative, and an x-ray which indicated borderline cystocele (a hernial protrusion of the bladder through the vaginal wall).

On December 16, 1993, Rake underwent a consultation examination by Dr. Shakir Moiduddin. Dr. Moiduddin noted that Rake complained of decreased sensation in her hands and feet. However, the examination revealed that Rake had full range of motion, her straight leg raising testing was negative, and there were no findings of radicular symptoms. Dr. Moiduddin also reported that Rake had no reflex loss, nor did she exhibit any loss of grip strength.

Thereafter, Rake was examined in June 1994, at which time her straight leg raising testing was negative, and she complained of no pain. In addition, Dr. Moiduddin reported that Rake had no muscle spasms, and no abnormalities of her extremities and spine other than minor back tenderness.

On April 25, 1995, a back x-ray of Rake indicated degenerative disc disease at L4–L5 and L5–S1. Despite complaints of lower back tenderness and only slightly positive straight leg testing (70 versus the normal 90), Dr. Richardson's examination revealed no remarkable findings. Approximately two months later, a clinical note indicated that Rake had no focal neurological deficits and straight leg raising testing was negative.

Rake argues that the ALJ's erred in ruling that she did not qualify as "disabled" under the Act. Although Rake makes several claims contesting the ALJ's ultimate decision, all arguments invariably address the lack of sufficient evidence. Thus, Rake states that the ALJ's decision should be reversed.

## III. DISCUSSION

The court must uphold the ALJ's decision on review so long as the ALJ's findings of fact are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997). The court does not focus on whether Rake is disabled, but whether the ALJ's findings were supported by substantial evidence. *See*

*Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir.1997). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stevenson v. Chater,* 105 F.3d 1151, 1153 (7th Cir.1997) (*quoting Consolidated Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). It is not the court's responsibility to decide facts anew, decide questions of credibility, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Binion,* 108 F.3d at 782; *Brewer,* 103 F.3d at 1390. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner." *Binion,* 108 F.3d at 782; *Walker v. Bowen,* 834 F.2d 635, 640–44 (7th Cir.1987). Finally, summary judgment is appropriate when substantial evidence exists in the record to support an administrative agency's decision. *Turner Broad. Sys. v. FCC,* —— U.S. ——, ——, 117 S.Ct. 1174, 1196, 137 L.Ed.2d 369 (1997).

A disability is the inability to participate in any substantial, gainful employment because of a medically demonstrable impairment which could be expected to last for at least a continuous twelve-month period. 42 U.S.C. § 423(d)(1)(A). The impairment must prevent a claimant from performing both her previous work and any other work existing in significant amounts in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520.

The Social Security regulations outline a five step inquiry for determining whether a claimant is "disabled." 20 C.F.R. § 404.1520(a)-(f). The ALJ must determine, in sequence, whether:

(1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments are severe; (3) the impairment meets or equals any of the impairments listed by the Social Security Administration at 20 C.F.R. Pt. 404, Subpart P, Appendix 1; (4) the claimant's impairment prevents her from performing her· past relevant work; and (5) her impairment prevents her from performing any work in the national economy.

*See* 20 C.F.R. § 1520(a)-(f); *Stevenson,* 105 F.3d at 1154; *Sevcik v. Chater,* 1996 WL 361551, at 3 (N.D.Ill. June 26, 1996).

A claimant has the burden of proof through step four. *Sevcik,* 1996 WL 361551, at *3; *See also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2293–94, 96 L.Ed.2d 119 (1987). If a claimant satisfies steps one, two and three, she will automatically be found disabled. *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995); *see Brewer,* 103 F.3d at 1391. However, if a claimant only satisfies steps one and two, but not three, then she must satisfy step four. *Id.* Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Id.*

In this case, the ALJ determined that Rake was not currently employed, and that she had a severe impairment. However, the ALJ found that the medical evidence presented at the hearing failed to establish that Rake's impairment was among, or equivalent to, those listed in the regulations. Based on the medical evidence, the ALJ stated that Rake had the residual functional capacity to perform work-related activities, including her past relevant work as a library clerk, with the exception of work involving lifting and carrying over twenty ·pounds. The ALJ rejected Rake's subjective representations regarding her pain and discomfort because they were "inconsistent and unsupported by objective clinical findings and other evidence of record." Accordingly, the ALJ concluded that she was . not disabled. *See* 20 C.F.R. § 404.1520(a)-(f).

Substantial Weight of the Evidence

██ In order for the court to uphold the ALJ's decision, the ALJ must have articulated his analysis at some minimal level. *Incopero v. Chater,* 1996 WL 19585, at *3 (N.D.Ill. Jan.12, 1996). The evidence need not compel the ALJ's conclusion; rather, the evidence must simply support that conclusion. *Id.* Further, the ALJ is not required to submit a written evaluation of every piece of evidence: Rather, an ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to

trace the path of the ALJ's reasoning.'" *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1986)). The court concludes that the ALJ sufficiently articulated his reasons and conclusions based on substantial evidence.

■ Rake argues that the ALJ's decision runs contrary to the substantial weight of the evidence. The court disagrees. The record reflects that the ALJ carefully considered all the medical evidence in determining whether Rake met the listing requirements under the Act. The ALJ thoroughly discussed the medical reports presented to him from November 1992 to June 1995. These reports included the opinions, findings, and diagnosis of several physicians, including Dr. Butler, Dr. Moiduddin, Dr. Richardson, Dr. Curran, and Dr. Turk. The ALJ determined that the evidence, taken as a whole, failed to support Rake's general claim of being disabled. Furthermore, the ALJ stated in his decision that the medical evidence presented did not "serve to reduce her residual functional capacity for a full range of light work."

Nevertheless, Rake argues that the ALJ summarily rejected Dr. Butler's medical opinions, as well as her subjective complaints regarding pain and discomfort. These arguments lack merit. First, the record clearly reflects that the ALJ thoroughly considered Dr. Butler's medical reports. Although Dr. Butler's early reports noted a disc herniation, his subsequent examinations revealed no such condition. Dr. Butler's original diagnosis was also inconsistent with the other evaluating physicians.

Second, the ALJ's decision carefully outlines Rake's subjective complaints. However, when compared to the objective medical reports, the ALJ found that her subjective complaints were unsubstantiated. Specifically, the ALJ's decision stated that "evaluations have generally been negative, and revealed no limitation of movement nor any other limitations that would preclude her from meeting the requirements of light work." The ALJ also noted that one doctor reported "questionable" or "subjective" complaints of sensory deficits for which he could find no objective explanation. Finally, the

ALJ regarded Rake's testimony regarding pain relief from Ibuprofen and limitation on fluid intake, as well as using protective shields, as further support of her ability to perform light work.

Rake briefly argues that the ALJ failed to properly develop the record by ordering suggested medical tests or examinations. That there could have been additional evidence does not warrant a finding that the ALJ failed to fully and fairly develop the record. "It is always possible to do more. How much evidence to gather is a subject on which district courts must respect the ... [ALJ's] ... reasoned judgment." *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir.1993). Mere speculation that further evidence might have been available is insufficient to warrant reversal. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994). In this case, not only was the ALJ well within his discretion to not order additional medical tests or examinations, but he specifically made reference to Dr. Curran's report that Rake refused to undergo recommended NCS studies or EMG testing.

## IV. CONCLUSION

The court concludes that the ALJ's decision was based on substantial evidence. In finding that Rake was not disabled, the ALJ issued a thoroughly articulated decision based upon the evidence presented to him at the administrative hearing. Furthermore, the ALJ did not substitute his judgment for that of the treating physicians, nor did he summarily disregard important evidence. Therefore, Defendant Commissioner's motion for summary judgment is granted, and Rake's motion for summary judgment is denied.

IT IS SO ORDERED.