Mattie **COLLINS,** Plaintiff,

v.

Kenneth S. **APFEL,** Commissioner of Social Security, Defendant.

No. 98 C 1629.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 14, 1998.

Rebecca L. Saunders, Law Office of Steven Coursey, Chicago, IL, for plaintiff.

Daniel Edward May, U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

What is the weight of one gallon of water? The answer, which is easy enough to come by, has a surprising amount to do with this case, Mattie Collins's appeal of an administrative law judge's decision that she is not disabled and hence is not entitled to disability insurance benefits or supplemental security income.

The ALJ, following the five-step inquiry specified by the Social Security regulations, *see, e.g., Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir.1997) (citing 20 C.F.R. § 404.1520), concluded that Collins (1) did not have a job; (2) was severely impaired; (3) did not have an impairment listed in the regulations; (4) could perform her "past relevant work" as a dry-goods marker for Marshall Fields; and (5) could perform other "light work." If correct, the last two findings alone or together establish that Collins is not disabled, and Collins argues that no "substantial evidence," in the words of 42 U.S.C. § 405(g), supports either of them.

Regardless of whether she is "disabled" in the eyes of the law, Collins is not well. She was hospitalized with chest and heart problems in 1988, 1992 (when she stopped working at the age of 49), and 1993, when doctors performed angioplasty on her, and she was given medicine on two of those three visits. She has been treated for diabetes since at least 1988, and that condition has also sent her to the hospital on multiple occasions. An x-ray in 1993 revealed problems with her knees and spine, and in 1995 she reported to her endocrinologist that exposure to cold weather made her stiff and sore. She complained to a different doctor of chronic back discomfort in 1995, at which time she also reported that her heart condition had been stable during the past year. About a year later, Collins complained to a third doctor about her left knee, and he concluded that she had a joint disease. An x-ray again indicated some spinal problems. A few weeks later, the endocrinologist completed a Report of Incapacity for the Illinois Department of Public Aid in which she stated that Collins suffered from chest pain and tiredness from exertion and that her basic motor functions, such as walking and bending, were reduced twenty to fifty percent. Collins again complained of knee and back pain a few months later, and the endocrinologist completed a Physical Capacities Evaluation in which she opined that Collins's ability to stand, walk, sit, and lift and carry objects was extremely limited due to unstable angina and that Collins could not work.

Collins testified before the ALJ that her left knee and back often bothered her and that she was unable to walk even one block; sometimes her knee bothered her so much that she had to crawl up the stairs, dragging her left leg behind her, though other times she could mount stairs one leg at a time with pain and shortness of breath. She estimated that she could lift five pounds but admitted, in response to a question from the ALJ, that she could lift a gallon of water (the ALJ's decision erroneously reports that Collins admitted she could lift a gallon of milk), but she cannot pick up objects off of the floor. She

testified that she could only stand for a few minutes at a time and that she was unable to sit in one position for more than a half hour. She also said that her medicine made her drowsy during the day and that she had trouble sleeping through the night. She told the ALJ that she was capable of preparing an easy breakfast such as toast and coffee and doing light shopping but that she did almost no housework and could not make her bed. A report she submitted indicated that she did some sweeping and mopping, but at the hearing she testified that she no longer could do either. She occasionally drove to church on Sunday, unless she wasn't feeling well, and she was able to bathe and dress herself.

When considering whether Collins could resume her old job at Marshall Field's, the ALJ observed that the medical evidence supported Collins's complaints of pain and functional limitations, but she did not believe Collins's statements about her limited ability to sit, stand, and walk. These were undercut, the ALJ believed, by "the claimant's admitted daily activities, which include cooking, shopping, and driving," and by Collins's report of crawling up stairs, which the ALJ thought inconsistent with knee pain. The ALJ also discounted the endocrinologist's reports about Collins. Finally, noting that Collins could lift a gallon of milk (again, water), the ALJ concluded that Collins was capable of "light work," which involves lifting and carrying up to ten pounds frequently and twenty pounds occasionally, and standing and walking for the greater part of the working day, *see* 20 C.F.R. § 404.1567, and that she was therefore capable of resuming her "light work" as a dry goods marker (analysis step four) or of taking any one of a large number of jobs in the Chicago area requiring light work (analysis step five).

A gallon of water weighs 8.34 pounds, *see, e.g., Brita: Water Trivia Archive* (visited Dec. 1, 1998) <http:// www.brita.com/wtarchive.html>, so it is a mystery to us how Collins's admission that she could lift a gallon of water justifies the ALJ's conclusion that she could lift ten pounds frequently (i.e. for more than one-third of a workday) and twenty pounds occasionally (i.e. for up to one-third of a workday). Collins did not even testify that she could lift a gallon of water repeatedly or that she could carry it any meaningful distance, though she did say that she once tried to lift a bucket of mop water and suffered bad pains in her back. This was the *only* testimony before the ALJ regarding Collins's ability to lift heavy objects.

In turning Collins's "admitted daily activities" against her, occasionally making a breakfast of two slices of toast and coffee became "daily ... cooking" in the ALJ's decision, despite the fact that Collins testified *only* about toast and coffee and could not even grasp a skillet. "[D]aily ... shopping" appears to have been making periodic visits to the store with someone else and then only if they needed only a few items. And "daily ... driving" was really using the car to go to church on Sundays if Collins felt well enough. The ALJ also turned Collins's knee pain against her, writing that someone with severe pain in her left knee could not crawl up the stairs, so Collins's testimony was not credible. Collins had explained that she usually walked slowly up the stairs, one leg at a time and with pain and shortness of breath, but that if the pain was too great she might crawl on two hands and her good right knee, dragging the left leg behind her. Why would pain in the left leg preclude such movement? The ALJ's decision does not attempt an explanation.

Nor can we condone the ALJ's rejection of the endocrinologist's reports. The ALJ first wrote that she could not "fully credit these opinions because they explicitly rely on the claimant's heart problems for the severe exertional limitations, and [the endocrinologist] is not the claimant's treating cardiologist." This *could* have been a good reason to discount the endocrinologist's opinion—but only if the ALJ intended to rely on testimony from the treating cardiologist. *See generally* 20 C.F.R. § 404.1527(d)(5) (stating that the ALJ will usually give more weight to the opinion of a specialist than a nonspecialist). The ALJ did not hear testimony from Collins's treating cardiologist; in fact Collins testified that at the time of the hearing she did not *have* a treating cardiologist—even though the endocrinologist recommended that she see one after Collins described to the doctor her chest and knee problems—as her medical insurance would not cover the expense. More fundamentally, the ALJ was

not entitled to brush the endocrinologist's reports aside since she did not have any opinion from any other doctor to contradict them. *See Bauzo v. Bowen,* 803 F.2d 917, 926 (7th Cir.1986). In other words, this is not a case like *Stephens v. Heckler,* 766 F.2d 284, 288–89 (7th Cir.1985), where the ALJ chose between competing medical opinions, a choice to which we would have deferred. There is no medical evidence in the record to support the ALJ's finding that Collins was capable of "light work," and without such evidence the ALJ's decision cannot stand. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor...."); *Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir.1992).

The ALJ also thought the endocrinologist's reports "inconsistent with the claimant's admitted daily activities," though she did not explain the inconsistency. We have already elaborated on Collins's actual daily activities, and we do not see any conflict with the reports. The Physical Capacities Evaluation—the more recent and relevant of the two, as the doctor completed it about a week prior to the ALJ's hearing and it concerns Collins's abilities to lift, carry, stand, walk, sit, and so on—for example states that Collins's lifting and carrying capacity is "Less than sedentary (under 10 pounds maximum)." Since a gallon of water weighs less than ten pounds, the ALJ heard no contrary evidence. The Evaluation states that Collins's ability to stand, walk, and sit was "extremely limited," and Collins testified that she could not walk a block, stand for more than a few minutes, or sit in one position for more than a half hour. The Evaluation rates Collins's climbing ability as "not at all," which is hardly an unfair description of the difficulties Collins described in climbing stairs. As a fourth and final example, the Evaluation indicates that Collins is unable to use her hands for "Gross/Manipulation (Simple Grasping)," a notation consistent with her inability to hold onto a skillet. The government makes a few other feeble attempts to point at evidence which it believes undercuts the endocrinologist's opinion, such as that in April, 1995, over a year before the endocrinologist's Evaluation and the ALJ's hearing, Collins reported that her heart condition had been stable for the past year and that her electrocardiogram results in 1993 and 1994 were normal. Medical conditions, however, can change dramatically over time, and the endocrinologist's report and Collins's testimony was fresh, while the government's evidence was stale. We therefore do not think that any aspect of the endocrinologist's opinion is "inconsistent with ... other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2); the ALJ and the government have, at best, pointed out "specious inconsistencies." *Scivally,* 966 F.2d at 1077.

We remand this case to the ALJ for further proceedings consistent with this opinion. With the case back before her, the ALJ may either "receive and consider additional evidence regarding" Collins's capacity to work, *Bauzo,* 803 F.2d at 926; *see also* 20 C.F.R. § 404.1527(c)(3), or find that Collins is disabled, *see* 20 C.F.R. § 404.1527(c)(1), (d)(2). It is so ordered.