Tabitha S. GRIFFITH, Plaintiff–
Appellant,

v.

John J. CALLAHAN, Acting Commissioner of the Social Security Administration, Defendant–Appellee.

No. 97–1505.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 12, 1998.[1]

Decided March 11, 1998.

1. On January 9, 1998, we granted the Appellant's motion to waive oral argument. Therefore, the appeal is submitted on the briefs and record. See FED. R.APP. P. 34(a); CIR. R. 34(f).

Gary J. Szczeblewski (submitted on briefs), Sesser, IL, for Plaintiff–Appellant.

Michael C. Carr, Office of the United States Attorney, Benton, IL, Ayrie Moore, Social Security Administration, Office of the General Counsel, Region V, for Defendant–Appellee.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Tabitha Griffith appeals the final decision of the Commissioner of Social Security finding that she was not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c. For the reasons set forth below, we affirm.

### BACKGROUND

Since her birth on May 5, 1974, Tabitha Griffith has suffered spina bifida with resultant neurogenic bladder (dysfunction of the urinary bladder caused by a lesion of the central or peripheral nervous system). She has undergone numerous surgeries to correct the urinary and bowel incontinence associated with her condition and visits numerous doctors on a regular basis. Griffith's condition requires that for the rest of her life she perform intermittent self-catherization every four to six hours to drain her bladder. Except for a nervous disposition, all of Griffith's doctors agree that she is getting along well despite her condition. Her nervousness is controlled with small doses of Ativan, which although helpful to Griffith, she takes only infrequently. Griffith has never sought psychiatric care. She has a "limited" level of education, which is defined by the Social Security Regulations as the completion of between seven and eleven years of formal education. She has never held a job.

Griffith applied for supplemental security income ("SSI") benefits on May 4, 1992, alleging she cannot work as a result of residual effects from spina bifida. The Social Security Administration denied her application both initially and upon reconsideration. Griffith then requested a hearing, and on August 5, 1994, the Appeals Council remanded the matter for further development of the record concerning a mental impairment. In particular, the Appeals Council ordered:

> The Administrative Law Judge will obtain additional medical evidence concerning the claimant's mental impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. §§ 416.912–913). The additional evidence may include, if warranted and available, a consultative mental status examination and medical source statements about what the claimant can still do despite the impairment.

A supplemental hearing followed on remand, at which a medical expert, a vocational expert, a psychologist, and plaintiff testified. In April 1995, plaintiff's counsel arranged for her to undergo a psychological evaluation by Dr. Michael E. Althoff, Ph.D. Dr. Althoff diagnosed Griffith with an anxiety disorder resulting from congenital conditions and dysthymic disorder secondary to chronic medical conditions. He performed the Minnesota Multiphasic Personality Inventory on Grif-

fith, which showed clear signs of stability, with long-standing problems of anxiety and depression. Her Global Assessment of Functioning score was 55, which indicates moderate symptoms or moderate difficulty in functioning.

Based on the record and the additional information presented at the supplemental hearing, Administrative Law Judge (ALJ) Lawrence E. Shearer found that Griffith was not disabled because she could perform a significant number of unskilled, light, and sedentary jobs. On August 21, 1995, the Commission adopted the ALJ's conclusion that she was not disabled and therefore not entitled to SSI.

Griffith sought judicial review of the Commissioner's final decision in the United States District Court for the Southern District of Illinois, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Judge J. Phil Gilbert was assigned to the case, and referred the matter to Magistrate Judge Philip M. Frazier for a report and recommendation. After reviewing briefs from both parties, Magistrate Judge Frazier recommended that the Commissioner's decision be affirmed. Judge Gilbert accepted Magistrate Judge Frazier's recommendation and affirmed the Commissioner's decision. Judge Gilbert found that based on the record as a whole, Griffith has spina bifida with resultant neurogenic bladder requiring self-catherization, anxiety, and dysthymic disorders, but that her impairments do not, singly or in combination, meet or equal a condition specified in the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1.

Griffith appeals, arguing that: (1) the ALJ did not have the authority to refuse to follow the Appeals Council's "order" that he obtain a consultative mental examination upon remand; (2) the ALJ's decision was not supported by substantial evidence because the ALJ's residual functional capacity assessment was not supported by the record; and (3) the ALJ's assessment of her mental functional limitations was unsupported by the evidence.

### ANALYSIS

The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Commissioner. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Our standard of review is essentially the same as it is for the district court: unless there has been an error of law, we will uphold the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Herr v. Sullivan,* 912 F.2d 178, 180 (7th Cir.1990). The issue before this court is not whether the claimant is disabled, but only whether substantial evidence supports the ALJ's decision. *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir.1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 399–400, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1971) (citation omitted). In making a substantial evidence determination, we review the record as a whole, but we do not reevaluate the facts, re-weigh the evidence, or substitute our own judgment for that of the Commissioner. *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir.1997); *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir.1993). Because the ALJ is in the best position to observe the demeanor of witnesses, we will not disturb the ALJ's credibility determinations so long as they find some support in the record and are not "patently wrong." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994).

An individual claiming disability under the Act must demonstrate that she is "disabled," or has "an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The regulations to the Act provide for a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f) (1995). The five steps are addressed in order: (1) Is the claimant presently employed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant able to perform her former occupation? (5) Is the claimant able to perform any other work? 20 C.F.R. § 416.920(a)-(f). If the ALJ makes a dispos-

itive finding at any step, he does not review further. 20 C.F.R. § 416.920(a).

In this case, the ALJ found that: Griffith does not suffer from an impairment or combination of impairments which meets or equals the level of severity described in the Listing of Impairments; that the claimant's testimony as to the disabling effects of her medical problems was not credible; that she has the residual functional capacity for the exertional demands of sedentary and light work activity limited by the need to self-catherize every four hours; that based on the testimony of the vocational expert, there exists a very large number of jobs in the regional competitive economy that the claimant is capable of performing; and that the claimant has not been under a disability at any time through the date of the decision.

Griffith first contends that the ALJ erred in refusing to comply with the Appeals Council's order by not requiring a mental examination. However, a review of the Appeals Council's order makes clear that it did not order the ALJ to obtain a consultative mental examination, but merely concluded that further development of the record was required to support the ALJ's conclusion that Griffith did not have a medically determinable mental impairment. Specifically, the Appeals Council ordered:

> The Administrative Law Judge will obtain *additional medical evidence* concerning the claimant's mental impairment *in order to complete the administrative record* in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. §§ 416.912–913). The additional evidence *may include, if warranted and available,* a consultative mental status examination and medical source statements about what the claimant can still do despite the impairment. (emphasis added).

The Appeals Council's order, therefore, left the decision up to the ALJ as to whether he deemed a mental examination necessary.[2] He did not. The ALJ obtained enough additional information concerning Griffith's mental condition to complete the record without the need for a mental examination. *See* 20 C.F.R. § 416.917 (stating that an ALJ may order a consultative medical examination "[i]f [the claimant's] medical sources cannot or will not give [the ALJ] sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant] is disabled"); 20 C.F.R. § 416.912(f) (discussing when the agency may obtain a consultative mental examination, but noting that "generally, we will not request a consultative mental examination until we have made every reasonable effort to obtain evidence from your own medical sources."). The ALJ re-contacted the plaintiff's treating physicians and obtained additional medical reports from each; reviewed the psychological evaluation from Dr. Althoff, which had been arranged by Griffith's counsel; obtained the services of a psychologist to testify at the supplemental hearing; provided plaintiff with the opportunity to present additional evidence regarding her mental impairments (which she failed to do); and encouraged plaintiff's counsel to acquire and present evidence that might support an award of benefits. Additionally, the ALJ explained that he denied Griffith's counsel's request for a psychological examination at the expense of the Social Security Administration because "of the lack of any evidence of mental impairment other than subjective claims of nervousness and infrequent uses of prescribed Ativan." It was entirely within the ALJ's discretion to find that he had gathered enough evidence on Griffith's mental condition to support the Appeals Council's order. *See Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir.1994) (deferring to the reasoned

---

2. The regulations similarly do not require a consultative mental examination for the situation at hand. *See* 20 C.F.R. §§ 416.917–919t. Specifically, the regulations set forth the following as some specific situations where consultative examinations may normally be obtained: if the claimant's medical sources cannot or will not provide sufficient medical evidence about the claimant's impairments; if the additional evidence from treating sources cannot be obtained for reasons beyond the claimant's control; if the evidence is highly technical or specialized and is not available from treating or other sources; if a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved and this cannot be done by re-contacting the claimant's medical source; or if the claimant's condition has changed but there is no evidence establishing the current severity of the condition. 20 C.F.R. § 416.919a(b).

judgment of the ALJ in deciding how much evidence to gather). We agree with the magistrate judge's conclusion that:

> This evidence suggests that plaintiff's mental impairment was mild and controlled with infrequent, small doses of medication. The ALJ could rationally conclude that the medical reports provided the information necessary to assess the impact of plaintiff's mental impairments on her ability to carry out the mental activities needed for work. Under the circumstances, the ALJ was not obligated to purchase a consultative mental health examination.

Accordingly, we find that the ALJ did not err in refusing to order a consultative mental examination.

■ Griffith next contends that the ALJ's decision was not supported by substantial evidence because the ALJ's residual functional capacity assessment was not supported by the record. Griffith specifically challenges the ALJ's evaluation of the record concerning her incontinence and her mental limitations. However, plaintiff failed to raise this argument before either the district court or the Appeals Council. She has failed to exhaust this issue at the administrative level and has therefore waived her right to raise it on appeal. *See Brewer v. Chater,* 103 F.3d 1384, 1393 (7th Cir.1997); *Papendick v. Sullivan,* 969 F.2d 298, 302 (7th Cir.1992), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 968, 122 L.Ed.2d 124 (1993).

■ Even if Griffith had raised the issue below, she still would not have prevailed. Griffith was required to prove that she did not have the functional capacity to perform a job. *See Brewer v. Chater,* 103 F.3d at 1393. The ALJ carefully considered this issue and found that she did have the functional capacity to perform a job. We believe the ALJ's decision was supported by substantial evidence. ALJ Shearer reviewed the record and the testimony and found that Griffith's bowel and urinary incontinence would not prevent her from performing unskilled sedentary and light work. He noted the vocational expert's findings that "she could perform a full range of sedentary unskilled jobs in a limited range of light unskilled jobs." The expert found that Griffith could seek employment in a small number of security guard jobs and a small number of inspection and quality control jobs, or as an unskilled cashier or a sedentary unskilled clerical worker.

Griffith, in contrast, relied on isolated portions of her childhood medical history to substantiate her claims that she could not work due to incontinence. However, the record contains minimal references to incontinence during the relevant time period. ALJ Shearer reviewed the reports from each of Griffith's treating physicians and determined that instances of bowel incontinence were few and that via intermittent self-catherization Griffith has achieved a large measure of urinary continence. Griffith did not report these alleged problems to her treating neurologist and mentioned the problem only once in 1988 to her treating physician, Dr. Hargett. Since her last surgery the medical evidence showed that she is doing well, and the problem was not mentioned again in any of Dr. Hargett's notes. The ALJ weighed the credibility and strength of various doctors' reports and properly discounted Griffith's testimony as inconsistent with her medical records. *See Knight v. Chater,* 55 F.3d 309, 313–14 (7th Cir.1995) (citing cases). We will not disturb his credibility determinations. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994).

Finally, Griffith argues that the ALJ's assessment of her mental functional limitations was unsupported by the evidence. Griffith waived this argument when she failed to raise it before the Appeals Council. *See Brewer v. Chater,* 103 F.3d at 1393; *Papendick,* 969 F.2d at 302. However, even if she had raised it below, the outcome would not change: the ALJ's decision was supported by substantial evidence.

ALJ Shearer paid particular attention to Griffith's claimed mental limitations following the Appeals Council's order to complete the record. Having concluded that her impairments did not meet or equal the requirements of a listed impairment, the ALJ proceeded to Step Four of the sequential analysis to determine her residual functional capacity (RFC). The regulations require an ALJ to measure what a claimant can do despite the limitations imposed by her impairments in order to determine whether the claimant can perform her past or other work. *See* 20 C.F.R. §§ 416.920(e), 416.945.

The ALJ found that despite Griffith's bladder problems requiring self-catherization and her anxiety and dysthymia, she retained the RFC to perform unskilled sedentary and light work that did not require substantial public contact.

ALJ Shearer's conclusion was supported by substantial evidence. All of Griffith's regular treating doctors reported that she is doing well, despite her condition. After Griffith filed for SSI, Dr. Hargett offered an opinion that she was unable to work due to required self-catherization and nervousness. The ALJ rejected this opinion as being inconsistent with Dr. Hargett's earlier opinion that Griffith was continent and could perform secretarial work because of her good verbal abilities. Dr. Hargett submitted no new clinical or laboratory findings to justify his changed opinion. Additionally, the ALJ noted that not only did Dr. Hargett fail to support his later opinion with objective findings of deterioration, but that the doctor contradicted his later opinion by stating that the Ativan helped Griffith and that she could be prepared to work with some psychological counseling. The ALJ noted that Griffith's other treating physicians did not corroborate Dr. Hargett's later opinion. The ALJ reasonably rejected Dr. Hargett's later opinion that she was unable to work. *See Knight v. Chater*, 55 F.3d 309, 313–14 (7th Cir.1995) (properly rejecting inconsistent medical testimony); *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir.1993) (finding that when there is a lack of objective medical findings, an ALJ may discount a treating physician's disability opinion).

The record also reflects that although Griffith testified to experiencing anxiety, she never received psychological counseling. None of her treating physicians referred her to a mental health specialist for treatment, nor did she initiate treatment on her own. Her prescription for Ativan reportedly helped her condition, although she failed to take it regularly. Before Griffith filed for SSI, Dr. Hargett reported that she possessed good verbal abilities and would perhaps be suited for secretarial work. Dr. Althoff, the psychiatrist retained by Griffith's counsel, reported that although she manifested obvious signs of anxiety, he found only minimal objective mental abnormalities.[3] Finally, the psychologist who testified at the supplemental hearing, Dr. Anderson, stated that after reviewing the record, including Dr. Althoff's report, he believed that Griffith's mental disorder did not meet the requirements in the Listings of Impairments, that her alleged incontinence was physical, not mental, and that she would need to have a job with easy access to the restroom facilities. This evidence indicates that the ALJ's determination that Griffith retains the mental ability to perform an unskilled job was amply supported by the record.

### CONCLUSION

We are sympathetic to Griffith's condition and the hardship she suffers. However, we find that the Commission's conclusion that Griffith is not disabled is supported by substantial evidence. The judgment of the district court is therefore AFFIRMED.

---

3. The ALJ rejected that part of Dr. Althoff's opinion which found that Griffith's mental condition would markedly interfere with her occupational and interpersonal functioning as being inconsistent with the doctor's minimal objective findings, as well as with the reports submitted by Dr. Hargett that found the Ativan helped her a great deal, and with the findings of the psychologist who testified at the supplemental hearing.