151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mervin A. HANSON, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security,
[1] Defendant-Appellee.
 No. 97-3843.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1998.
Decided July 28, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 96 C 891 William E. Callahan, Magistrate Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JESSE E. ESCHBACH, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Mervin Hanson appeals the denial of his third application for supplemental security income under 42 U.S.C. § 1381a, based on his alleged disability. The administrative law judge ("ALJ") found that Hanson was not "disabled" as defined by 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) and that Hanson retained the residual functioning capacity to perform a number of existing jobs. The district court affirmed the ALJ's judgment, and we also affirm.
 
 
 2
 Hanson is a 51-year-old man whose primary employment was driving a truck but who can no longer perform that job because he suffers from numerous physical impairments. At the hearing before the ALJ, Hanson detailed the history of his physical problems. In 1964 he was in a motorcycle accident which resulted in a brain concussion, a broken right leg, and a broken jaw. These injuries led to partial right side paralysis, which has become increasingly severe. Hanson was involved in an industrial accident in 1978, in which he pulled two discs in his back. In July of 1990 Hanson was in another motorcycle accident and fractured his right shoulder. Six months later Hanson broke his right knee and dislocated his left shoulder when he slipped on ice. Hanson stated that he cannot sit for more than 15-20 minutes, cannot stand without leaning against something, cannot walk for more than half a block, and can only drive short distances. In 1995 he attempted to work several jobs as a truck driver, but he was fired from each within weeks due to his physical difficulties that interfered with his job performance. Hanson also trained to become a security guard but was fired when his employer discovered he had a prior felony conviction.
 
 
 3
 Hanson presented other evidence at the hearing in support of his claim of disability. He presented medical records from Dr. Harned in which Dr. Harned opined that Hanson has chronic low back pain, chronic laxity of his right knee, malunion of his right femur, and right hemiparesis (muscular weakness or partial paralysis) secondary to brain injury. Dr. Harned also stated his belief that Hanson is disabled and not able to be gainfully employed. Charles Williams, a vocational expert employed by the Wisconsin Division of Vocational Rehabilitation, also testified that he believed Hanson would be unable to secure and perform a sedentary position with a sit/stand option (where an employee may either stand or sit as needed) due to his constant pain and his inability to sit for more than 15-30 minutes at a time.
 
 
 4
 In order to establish "disability" under the Social Security Act (the "Act") a claimant must show that he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To determine whether a claimant is disabled, the ALJ considers the following questions in order: "(1) Is the claimant presently employed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant able to perform her former occupation? (5) Is the claimant able to perform any other work?" Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir.1998) (citing 20 C.F.R. § 416.920(a)-(f)). The ALJ found that Hanson's impairments were severe but that Hanson was not "disabled" because the pain he suffers does not qualify as a medical impairment, or combination of impairments, meeting or equaling the requirements of any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Although the ALJ agreed that Hanson could no longer perform his past work, the ALJ found that the Commissioner met its burden of proof that a person with Hanson's limitations could perform a number of existing jobs. Specifically, the ALJ accepted testimony of John Schroeder, a vocational rehabilitation counselor, who opined that Hanson could perform several thousand jobs available in the Milwaukee area.
 
 
 5
 We review the final decision of the Commissioner of Social Security, upholding the Commissioner's findings of fact if they are supported by substantial evidence and no error of law was committed. Griffith, 138 F.3d at 1152 (citing 42 U.S.C. § 405(8)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Richardson v. Perales, 402 U.S. 389, 399-400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). To determine whether such substantial evidence exists, this court reviews the record as a whole but does not substitute its judgment for the Commissioner's "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir.1997).
 
 
 6
 Hanson argues that the Commissioner's determination that Hanson is not disabled is not supported by substantial evidence on the record as a whole because the ALJ failed to give sufficient weight to Dr. Harned's opinion as the treating physician. However, whether a physician is a treating physician is only one of a variety of factors that an ALJ must consider in evaluating conflicting medical evidence. " '[W]hile the treating physician's opinion is important, it is not the final word on a claimant's disability.' " Books v. Chater, 91 F.3d 972, 979 (7th Cir.1996) (quoting Reynolds v. Bowen, 844 F.2d 451 (7th Cir.1988)). The ALJ also must consider factors such as "the length, nature, and extent of the treatment relationship; the physician's speciality; and the consistency and supportability of the physician's opinion." Id. (citing 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d)). The ALJ provided numerous reasons for giving Dr. Harned's opinion little weight--Dr. Harned's opinion regarding Hanson's inability to work because the opinion was not supported by objective evidence; Dr. Harned looked at no X rays; he took pain complaints only by history; and he appeared to conduct only a perfunctory examination. The ALJ also objected to Dr. Harned's failure to state an opinion regarding Hanson's residual functional capacity or to explain why Hanson cannot work.
 
 
 7
 The ALJ properly considered all relevant medical evidence, not just the physicians' opinions. See Diaz v. Chater, 55 F.3d 300, 306, n. 2 (7th Cir.1995). Hanson's assertion that the ALJ provided no reason for disregarding the findings of Dr. Smirl also is without merit. "We have repeatedly stated that the ALJ need not evaluate in writing every piece of evidence and testimony submitted." Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir.1993). The only reference in the record to Dr. Smirl is Williams' testimony that Dr. Smirl found Hanson incapacitated. Dr. Smirl's general finding was similar to Dr. Harned's, and the ALJ discounted these findings as inconsistent with the other medical evidence. See Griffith, 138 F.3d at 1154. In her decision the ALJ placed great emphasis on the series of X rays taken from 1967 through 1991. According to the ALJ, these X rays showed that Hanson's injuries from his prior accidents were well-healed and did not indicate that Hanson suffered any additional difficulties because of these injuries. Evidence of the severity of Hanson's pain and impairments was largely based on Hanson's testimony, and the ALJ concluded that the medical record did not support Hanson's "reports of the severity of his pain and impairments, or the level of limitation described by the claimant." See Diaz, 55 F.3d at 307 (The ALJ is entitled to make credibility determinations and decide that the extent of the claimant's impairments is exaggerated.). The ALJ's opinion shows that she considered the important medical evidence before her and enables us to trace her reasoning. Carlson, 999 F.2d at 181 (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir.1985)). Because there is sufficient evidence in the record as a whole to support the ALJ's disability determination, we affirm the district court's decision that Hanson was not disabled as defined by the Act.
 
 
 8
 After the ALJ found that Hanson was not capable of performing his past work, the burden of proof shifted to the Commissioner to establish that Hanson was capable of performing other work that exists in the national economy, considering his age, education, work experience, and functional capacity. Brewer, 103 F.3d at 1391 (citing 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)). In order to determine whether Hanson was capable of performing existing jobs, the ALJ asked Schroeder two hypothetical questions. On appeal, Hanson argues that the ALJ disregarded Schroeder's answers to the hypothetical questions and that the ALJ improperly found that not all of the limitations set forth in her hypotheticals were established by the evidence.
 
 
 9
 First, the ALJ presented the following hypothetical job requirements to Schroeder: a sedentary work position with a sit/stand option, and no bending, twisting, squatting, or crawling, assuming the employee could sit for 30 minutes at a time. Schroeder responded there were several thousand jobs available in the Milwaukee area that met these qualifications, such as a receptionist/information booth job, a cashiering job, and several manufacturing jobs, including assembly, packaging, and quality assurance. The ALJ then further restricted the hypothetical to include diminished bi-manual dexterity (i.e., restricted ability to grasp and to perform fine types of work or consistent repetitive work with both hands). Schroeder then opined that Hanson could still work as a receptionist/information booth employee or a cashier, "assuming that he has complete ability to use his left dominant arm ... and hand." When Hanson's attorney questioned Schroeder regarding Hanson's need to use a cane when he stands, Schroeder stated his belief that Hanson's use of a cane and inability to use both hands would not pose "a significant problem" to performing these positions. The ALJ held that the medical evidence established that Hanson was capable of sedentary work with a sit/stand option, and that he could perform any of the jobs suggested by Schroeder, including the manufacturing jobs. Although the ALJ did not mention Hanson's claim of diminished bi-manual dexterity, the ALJ apparently found that this impairment was not established by the evidence in the record because she concluded that Hanson could perform the manufacturing jobs, as well as the receptionist/information booth and cashiering jobs.
 
 
 10
 Hanson contends that the evidence in the record establishes that he does not have complete ability to use his left hand because he must hold a cane in his left hand while standing or walking. He argues that there is no evidence in the record to refute Dr. Harned's and Dr. Smirl's belief that he is disabled. However, as discussed above, the ALJ's determination that Hanson was not disabled within the meaning of the Social Security Act is supported by substantial evidence. The ALJ's decision that Hanson's diminished bi-manual dexterity was not established by the evidence also is supported by substantial evidence in the record as a whole. The only evidence in the record that Hanson must use a cane while standing is his own testimony. The ALJ specifically found that the other medical evidence did not support Hanson's testimony regarding the severity and the extent of his impairments. A hypothetical question need not contain every limitation alleged by the claimant; instead, a hypothetical is proper when it reflects the claimant's impairments to the extent that the ALJ finds them supported by the evidence in the record. See Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir.1992). Moreover, Schroeder found that a person with diminished bi-manual dexterity could perform certain existing jobs. Schroeder specifically opined that Hanson's use of a cane in his left hand while standing would not prevent him from working as a receptionist/information booth employee or a cashier. "When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs a claimant reasonably can perform, even if the hypothetical question itself does not take into account every aspect of the claimant's impairments." Id.
 
 
 11
 Finally, Hanson also argues that the ALJ ignored Williams' testimony and failed to address Williams' opinion that Hanson is disabled and unable to perform light sedentary work. The ALJ, however, commented that Williams was unable to explain why Hanson could not perform simple, repetitive work. Rather than directly responding to the ALJ's question whether Hanson could perform a sedentary job with a sit/stand option, Williams testified that he was not certain that Hanson would be able to secure a sedentary job because he is in pain most of the time, he cannot sit for more than 15-30 minutes at a time, he is physically unable to perform a job, and employers are not interested in him due to his physical problems. Williams' opinion that Hanson was unable to work appears to be based more on Williams' belief that Hanson would be unable to secure work than on a belief that Hanson was unable to work due to his physical difficulties. We cannot disturb the ALJ's credibility determinations as long as support for the decision exists in the record. Griffith, 138 F.3d at 1152.
 
 
 12
 Because the Commissioner's determinations that Hanson is not disabled and that he retains the residual functioning capacity to perform a number of existing jobs are supported by substantial evidence in the record as a whole, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Kenneth S. Apfel has replaced John J. Callahan as the Commissioner of Social Security, and his name is substituted as the defendant-appellee in this action. Fed.R.App. 43(c)(1)