165 F.3d 31
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Christine BENNETT, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 98-2049.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 17, 1998.
Decided Dec. 10, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 97-3008. Charles H. Evans, Magistrate Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. JOEL M. FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Christine Bennett applied for social security benefits. She suffers from systemic lupus erythematosus with arthropathy, status post osteomyelitis, and bipolar disorder. She is a 33 year-old high school graduate with no post-secondary education or vocational training. In the past she has been employed as a child-care worker and cosmetologist. The Social Security Administration (SSA) denied her application, finding that she is capable of light work with some restrictions. The district court affirmed. On appeal, Bennett contends that the Administrative Law Judge (ALJ) ignored evidence and erred in rejecting her psychiatrist's opinion. Bennett also argues that the ALJ's finding that she is capable of performing unskilled light work is not supported by sufficient evidence. We affirm.
 
 I.
 
 2
 Bennett applied for supplemental security income on September 13, 1994, claiming she became disabled in 1989. Bennett stopped working in 1989. SSA initially, and upon reconsideration, denied Bennett's application. Then Bennett requested a hearing by an ALJ. At the hearing only Bennett and the vocational expert, Dr. James E. Lanier testified. Bennett testified that she cares for her three children and can lift her two-year old who weighs twenty pounds. She stated that she does housework with the help of her children, ages 9 and 2, and her step-son age 13. Bennett further testified that she grocery shops and drives two or three times per week. Occasionally, Bennett takes her children to the park. Bennett stated that she is able to care for her own personal needs. She also testified that she cannot stand without stiffening for more than 10 or 15 minutes, that she experiences difficulty in walking and that, although she can bend over, she cannot squat. Bennett also complained that the lupus causes her to suffer severe fatigue three or four days a month.
 
 
 3
 In addition to the hearing testimony, the ALJ considered medical records and written statements provided by Bennett's treating physicians: Dr. Pick, a rheumatologist, Dr. Adair, an orthopedic surgeon, Dr. Kozak, a family practitioner, and Dr. Lauer, a psychiatrist.
 
 
 4
 The ALJ found that Bennett had not been gainfully employed since applying for disability. She concluded that Bennett suffers from systemic lupus erythematosus with arthropathy, bipolar disorder, and is status post osteomyelitis which meets the regulatory definition of severe impairment. The ALJ further found that Bennett does not have an impairment listed in or medically equivalent to one listed in 20 C.F.R. § 404, pt. 404, subpt. P, app. 1. The ALJ concluded that Bennett was unable to perform her past relevant work as a child care attendant or cosmetologist. Nevertheless, based on the vocational expert's testimony that there are jobs in the economy Bennett could perform given her age, education, experience and physical and mental limitations, the ALJ found Bennett capable of performing light work jobs with some restrictions. Those restrictions limit Bennett to light work jobs involving only routine and repetitive tasks that do not require working at unprotected heights, climbing, using foot or leg controls or performing fine manipulations with her hand. Thus, the ALJ found Bennett not "disabled" as defined in the Social Security Act.
 
 
 5
 Bennett appealed the SSA's decision in the district court. The parties consented to conducting all further proceedings in the case, including order of final judgment, before a magistrate judge. The magistrate judge granted SSA's motion for summary affirmance. Bennett filed a timely notice of appeal.
 
 II.
 
 6
 Judicial review of SSA decisions is limited. Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir.1998). Our standard of review is essentially the same as it is for the district court: unless there has been an error of law, we will uphold the ALJ's findings of fact if they are supported by substantial evidence. Id . "The issue before this court is not whether the claimant is disabled, but only whether substantial evidence supports the ALJ's decision." Id. We cannot re-evaluate the facts, reweigh the evidence, or substitute our own judgment for that of the SSA. Estok v. Apfel, 152 F.3d 636, 638 (7th. Cir.1998). Instead, we must affirm the SSA's finding if it is supported by substantial evidence. Id. A mere scintilla of proof will not suffice to uphold the SSA's findings, but the standard of substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).
 
 
 7
 Bennett argues that the ALJ ignored evidence that her impairment met or equaled Listing 1.03A. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. "An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace his path of reasoning." Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). Failure to consider an entire line of evidence falls below the minimal level of articulation required. Id. An ALJ may not ignore evidence that suggests an opposite conclusion. Taylor v. Schweiker, 739 F.2d 1240, 1243 (7th Cir.1984). However, an ALJ need not provide a written evaluation of every piece of evidence that is presented. Pugh v. Bowen, 870 F.2d 1271, 1278 (7th Cir.1988). Instead, the ALJ must consider and discuss the important evidence. Anderson v. Bowen, 868 F.2d 921, 924 (7th Cir.1989). In this case, the ALJ adequately considered all of the evidence.
 
 
 8
 Bennett claims that the ALJ ignored evidence that she has an obliterated left ankle, a deformed left leg that is too short, a right knee with serious and marked degeneration, and a marked impairment of her ability to walk. However, the ALJ's findings show she considered this evidence. The ALJ accurately summarized reports from Drs. Pick, Kozak, and Adair specifically mentioning the condition of Bennett's left ankle, her left leg, and her right knee. The ALJ did not conclude that Bennett's ability to walk was markedly impaired, one of the requirements of Listing 1.03A. Instead, in her findings, the ALJ relied on Dr. Adair's assessment that "found that the claimant may need a cane for ambulations, but noted it was to provide the claimant reassurance, but she could ambulate 50 feet without any assistance." The ALJ also based her findings on Bennett's testimony that her daily activities included caring for her three children, doing housework, grocery shopping and taking her children to the park. The ALJ found these activities were not consistent with a serious impairment of the ability to walk. Thus, the ALJ did not, as Bennet claims, ignore evidence of her impairments. Instead, the ALJ considered all of the evidence and found it fell short of the requirements of Listing 1.03A.
 
 
 9
 Bennett also insists she met the requirements of Listing 1.03A by establishing that she was in persistent pain. In evaluating reports of pain, an ALJ considers factors such as daily activities, and the types and dosages of medication taken to alleviate pain. See 20 C.F.R. § 416.929(3). The ALJ did not find Bennett's claims constant of pain fully credible, specifically stating that Bennett's claim was undermined by her testimony regarding her daily activities and the fact that she was not taking any medications for pain at the time of the hearing.
 
 
 10
 Bennett also argues that even if her impairments do not satisfy the specific conditions of Listing 1.03A, they are medically equivalent to the Listing. Bennett has the burden of proving that her impairments are medically equivalent to Listing 1.03A, a burden she did not satisfy. In order for an impairment to be medically equivalent it must, at a minimum, equal a listed condition in severity and duration. 20 C.F.R. § 416.926(a). Listing 1.03A requires persistent joint pain. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. Based on Bennett's testimony, the ALJ found that Bennett did not suffer from persistent pain, thereby precluding a finding of medical equivalence.
 
 
 11
 Bennett contends the ALJ erred in rejecting the opinion of her psychiatrist. However, a doctor's opinion regarding a claimant's disability is not binding on the SSA. Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir.1982). Bennett argues that the ALJ should have given great weight to the opinion of her psychiatrist Dr. Lauer that she was incapable of working due to a bipolar disorder, thus meeting the requirement of Listing 12.04, Affective Disorders. But, an ALJ is not required to give a treating physician's opinion controlling weight, if substantial evidence supports an ALJ's finding that the opinion was not supported by other evidence in the record. Id. Furthermore, in order to be entitled to deference, a physician's opinion must be supported by objective findings and be consistent with other evidence in the record. 20 C.F.R. § 416.977(d)(3) & (4). An ALJ may not, however, substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. Rohan v. Chater, 98 F.3d 966, 968 (7th Cir.1996). Nor may an ALJ ignore the only evidence presented regarding an illness. Wilder v. Chater, 64 F.3d 335 (7th. Cir.1995).
 
 
 12
 In this case, however, the ALJ did not substitute her own opinion for that of a treating physician or ignore the relevant evidence. Instead, the ALJ found Bennett's psychiatrist's opinion regarding her ability to handle a job to be inconsistent with the record as a whole. The ALJ cited discrepancies between a September 1994 letter to Dr. Kozak, a family practitioner, regarding Bennett in which Dr. Lauer stated that Bennett had trouble concentrating, and his progress notes which do not mention this difficulty. The ALJ also observed that Dr. Lauer's opinion is not supported by his progress notes which reveal that Bennett reported improvements in her condition.[1] In addition, the ALJ relied upon Dr. Kozak's report that Bennett's mental condition was improving with medication, rather than Dr. Lauer's report that it was not. In fact, the ALJ considered all the evidence of Bennett's bipolar disorder. Based on her review of all this evidence, the ALJ found Dr. Lauer's opinion undermined by inconsistencies with other evidence in the record.
 
 
 13
 Finally, Bennett claims the ALJ's finding that she is capable of performing light work is unsupported by the evidence.[2] At the hearing the vocational expert testified that given Bennett's impairments, she would not be able to do any of her past jobs. The vocational expert further testified, however, that given Bennett's age, education, work experience, and physical and mental limitations that she could perform a range of sedentary work jobs, such as charge account clerk and data examination clerk, and some light work jobs, like cashier II, mail clerk, or mail sorter. The ALJ relied on the testimony of the vocational expert and cited Bennett's daily activities as proof that she could perform light work.
 
 
 14
 Bennett argues that the ALJ exaggerated the extent of Bennett's daily activities, failing to note that she must rest after fifteen minutes of housework, that her children help her with the housework, that her husband helps her care for the children and that she suffers severe fatigue several days each month. She further asserts that she cannot walk six to eight hours a day carrying 10 to 20 pounds.
 
 
 15
 However, even if the ALJ were incorrect in determining that Bennett could perform light work with some restrictions, we can still affirm if the evidence supports the conclusion that she can perform sedentary work jobs. Anderson, 868 F.2d at 926. At the hearing, Bennett's attorney asked the vocational expert to identify jobs Bennett could perform if she were further limited by an ability to stand for no more than fifteen minutes at a time. The vocational expert replied that such a limitation would not prevent Bennett from performing any of the sedentary work jobs and would eliminate a number, but, by no means all, of the light work jobs. Thus, even if, as Bennett asserts, she is not able to walk six to eight hours a day carrying 10 to 20 pounds, it has already been established that there are still many jobs she could perform. Consequently, because there are jobs Bennett could perform, she is not "disabled" for purposes of Social Security.
 
 
 16
 We conclude that the findings of the ALJ are supported by substantial evidence on the record as a whole, and therefore, we AFFIRM the district court's decision.
 
 
 
 [1]
 The ALJ also questioned whether Dr. Lauer's opinion was current, because he reported that Bennett has a phobic response to cars, yet, at the hearing, Bennett testified she had recently obtained her driver's license and drove several times a week
 
 
 [2]
 In assessing Bennett's residual functional capacity, the ALJ determined that Bennett could no longer perform her past work, but could perform light work, except insofar as such work would require working at unprotected heights, climbing, using foot or leg controls or performing fine manipulations with her hand. The ALJ also found Bennett's abilities limited to routine and repetitive tasks