**Anna M. MILLER, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

**No. CIV. 3:01CV00368AS.**

United States District Court, N.D. Indiana, South Bend Division.

Jan. 17, 2002.

Gary D. Davis, LaPorte, IN, for Plaintiff.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, IN, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on Plaintiff Anna M. Miller's ("Miller") appeal of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Jurisdiction over the Plaintiff's petition for judicial review is conferred on this court by 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On December 8, 1999, Miller filed for DIB, alleging that she became disabled on October 15, 1999 due to coronary artery disease, hypertension, a history of myocardial infarction, and chronic obstructive pulmonary disease, with resulting fatigue and stress. (See Administrative Record at pp. 13–14). The application was denied initially and then again on reconsideration. (See A.R. at p. 12). On September 7, 2000, Miller was afforded a hearing before Administrative Law Judge Steven J. Neary ("ALJ"). Ms. Miller along with her husband, Raymond Miller, and vocational expert (VE) Leonard Fisher, Ph.D. testified during the hearing. (A.R. pp 26–37). On October 11, 2000, the ALJ issued a decision finding that Miller was not disabled at any time through the date of the decision because she remained capable of performing her past relevant work. (A.R. p. 12). On March 28, 2001, the Appeals Council denied Miller's request for review which thus rendered the ALJ's opinion a final appealable decision of the Commissioner with respect to that particular finding. On May 18, 2001, Miller filed the instant action pursuant to 42 U.S.C. § 405(g), for review of the Commissioner's decision.

## II. BACKGROUND

Ms. Miller was born on March 1, 1955 and was 45 years of age at the time of the Commissioner's decision below. Miller had attained her high school diploma and performed various work as a shirt press operator and seamstress before her alleged date of onset. (A.R. pp. 9–20)

The documented medical evidence reveals that Miller has been diagnosed with and suffered from numerous maladies including: coronary artery disease (A.R. pp. 97–139; 140–57); ischemic heart disease (A.R. pp. 216–17). Miller has been treated by Mckindra Fletcher M.D. and Franklin J. Firestone, M.D. for her various conditions both before and during the application for disability benefits. In October of 1999, Dr. Firestone examined Miller and found no chest pain or other abnormalities. (A.R. p. 209). Additionally, Dr. Firestone advised her to stop smoking, but otherwise reported no health-related concerns after his examination of Miller.

In November of 1999, Miller reported to her physicians that she was unable to continue with her regular employment due to fatigue. (A.R. p. 204). Miller had recently stopped smoking, however, her husband continued to smoke. Miller believed that she was developing bronchitis due to her exposure to the smoke. (A.R. at pp. 204–206). Dr. Fletcher reported that Miller had bilaterally mild to moderately reduced breath sounds with diffusely scattered rhonchi and wheezes (Id. at pp. 204–05). Miller was prescribed an inhaler and told to avoid environments with smoke. (Id. at 205).

Subsequent examinations and medical tests reveal a somewhat mixed bag as to Miller's medical condition. On December 14, 1999, Miller underwent a treadmill test which revealed that her exercise capacity was normal, her heart rate response was only minimally blunted and her blood pres-

sure response was relatively flat. (A.R. pp. 190–94). In January 2000, after continued reports of shortness of breath and fatigue, an examination revealed that her ventricular systolic function was moderately reduced. (A.R. pp. 197–98). In June of 2000, Dr. Fletcher opined that Miller's respiratory rate was unlabored. (A.R. p. 274). Dr. Fletecher's diagnosis revealed that Miller suffered from ischemic cardiomyopathy, with mild dysfunction and no overt heart failure. (A.R. p. 275). Additionally, in June of 2000, Dr. Firestone provided an assessment of Ms Miller's ability to do work-related activities, however, as discussed below that information provided very little in the way of informing the ALJ as to the physical capabilities of Miller. (See A.R. 296–298)

### III. ALJ'S DECISION

The ALJ determined after a review of the medical evidence that Miller was capable of performing a restricted range of light work activity. (A.R. p. 17) Furthermore, in determining her residual functional capacity, the ALJ stated that her subjective complaints had been considered and found to be not wholly credible. (Id.). In discrediting her subjective complaints the ALJ noted her daily activities, as well as her ability to continue work even after her myocardial infarction. (A.R. pp. 17–18). The ALJ then found that Miller was capable of performing her past relevant work and was therefore ineligible for benefits. (A.R. p. 19).

### IV. STANDARD OF REVIEW

■ This court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir.1998). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399–400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Griffith*, 138 F.3d at 1152; *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir.1997). With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffith*, 138 F.3d at 1152. The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id.; Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000).

### IV. DISCUSSION

■ The claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. The ALJ must consider the applicant's claim in the following sequence:

(1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can

perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford* 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). "An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford* 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford* 227 F.3d at 868. The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

■ Miller's first assignment of error below focuses on the ALJ's conclusion that she could return to her past relevant work. Specifically, that the ALJ failed to fully clarify whether Miller could perform her past employment either as she performed it or as it is usually performed in the national economy in his questioning to the vocational expert, Dr. Fisher. The use of a vocational expert's opinion in determining that a claimant may be capable of performing her past relevant work has been accepted in the past, however, care must be given that the description of the jobs correspond to activities within the claimant's capabilities. See *Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 392–93 (7th Cir.1992) citing *Tom v. Heckler*, 779 F.2d 1250, 1256–57 (7th Cir.1985).

■ Here the ALJ asked Dr. Fisher whether Miller could perform her past employment either as she performed it or as it is usually performed in the national economy given that she was limited to occupations where she is not required to, *inter alia*, lift more than ten pounds. (A.R. p. 36). Miller contends that the ALJ failed to clarify Dr. Fisher's response to that particular question concerning her ability to return to her former positions. A review of the testimony reveals that Dr. Fisher testified that Miller could given the limitations set out by the ALJ perform her past jobs as a sewing machine operator, seamstress and service establishment attendant as she formerly performed them. Dr. Fisher made this conclusion after reviewing the records in the file relating to her past employment, preparing a summary of her past relevant work (A.R.pp.95–96) and her testimony during the hearing. (A.R. p. 36). Miller urges that was error for the ALJ not to inquire into whether Miller could perform her activities as they are usually performed in the national economy as well. The ALJ was not obligated to pursue that question once it was determined that she could perform those activities as she had performed them. See *Anderson v. Bowen*, 868 F.2d 921, 925 n. 11 (7th Cir.1989).

■ Next, Miller asserts that the ALJ erred in failing to clarify whether she could perform the seamstress position as she had formerly performed it given her lifting restrictions. The ALJ mistakenly believed that the seamstress position required the lifting of items in excess of twenty pounds. However, the summary provided by Dr. Fisher demonstrates that such a position was classified as light in accordance with the Dictionary of Occupational Titles and the Social Security Regulations. (A.R. p. 96). Moreover, Miller clarified that she did not carry items in excess of twenty pounds in performing her seamstress job, but rather carried those items when performing her cutting job. (A.R. p. 36). Thus, the past relevant work discussed by Dr. Fisher fit within the residual functional capacity determined by the ALJ.

■ The next assignment of error involves the failure of the ALJ to incorpo-

rate into his residual functional capacity determination Miller's subjective complaints of fatigue. Miller argues that the ALJ's opinion is deficient in that it fails to discuss and refute her allegations of recurring fatigue or the medical evidence from the treating doctors that confirms the recurring fatigue. The court agrees with this assignment of error as discussed below and therefore REVERSES and REMANDS on this basis.[1]

"For this court to affirm a denial of benefits, the ALJ must 'articulate' the reasons for a decision at 'some minimum level.'" *Dixon v. Massanari,* 270 F.3d 1171,-1176 (7th Cir.2001). This means that the ALJ "must build an accurate and logical bridge from [the] evidence to [the] conclusion." *Id.* The court is reminded, as noted in *Dixon,* that the ALJ need not address every piece of evidence, but the court must be able to discern the ALJ's reasoning. *Id*

Unfortunately, the ALJ was presented with a daunting task in attempting to assess the residual functional capacity of Ms. Miller. Initially the court notes that the ALJ sought a medical assessment of Ms Miller's ability to do work-related activities from her treating physician Dr. Firestone. (See A.R. 296–298). In response to that inquiry, the ALJ was provided with very little information from which to make an informed decision. Dr. Firestone provided no assessment as to her ability to walk, stand, sit, frequently lift and or carry during an eight hour workday. Dr. Firestone opined that Ms. Miller could occasionally lift and or carry for a portion of an eight hour workday less than ten pounds. (Id. at 296). However, Dr. Firestone could not provide any medical findings to support this conclusion. (Id.).

In a commendable effort, the ALJ then conducted a review of the medical evidence in the record. He noted that after her initial myocardial infarction in September 1998 she was released to light work duty within four months. (A.R. p. 17). He noted that the findings on examination with regard to her heart condition generally include only mild fatigue and some incisional pain. Apparently, he relied on a stress test that indicated an acceptable exercise level demonstrating significant remaining functional capacity. (See A.R. p. 17).

This court has in the past been consistent in reversing decisions that do not address important lines of evidence. In this case, what is not apparent from the ALJ's decision is to what extent Miller's subjective complaints of fatigue was believable or unbelievable and how the fatigue impacted or did not impact Miller's residual functional capacity. See *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) ("If the administrative law judge believed the medical reports that found that [the claimant] has enough strength to work and disbelieved [the claimant's own testimony], this would compel the denial of the application for benefits. We cannot say that this combination of belief and disbelief would be unreasonable but we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994) ("Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for

---

1. Although, the court finds no error with respect to the first two issues presented by Miller, those issues may or may not need to be re-evaluated once the issue of Miller's fatigue is fully addressed on Remand.

accepting or rejecting entire lines of evidence."). According to Miller, the major factor in preventing her from continuing work was her continued complaints of fatigue. The record is replete with her subjective complaints of fatigue. (A.R. pp. 30,31,33, 34) In response to the ALJ's inquiry into why she had left her last job, Miller testified that "I just got to where I was so tired, I had to come home." (A.R. p. 30). Further, she stated that "I tried to go back and work . . . and I just got so tired . . ." (Id.). Furthermore, the ALJ acknowledged her subjective complaints of fatigue at several points in the record. (A.R. pp. 15,16,17, 30).

The ALJ in considering Miller's subjective complaints, determined that she was not totally credible in her allegations that she cannot do any work activity. The ALJ's discussion covers her subjective testimony as it relates to her ability to stand, walk or sit. (A.R. p. 18). The ALJ further discusses her daily activities in determining that the activities are consistent with a restricted range of light work activity. Despite Miller's continued subjective complaints and the ALJ's recognition of those complaints of fatigue his opinion does not address how the fatigue did or did not affect her ability to continue to perform her past employment as it was previously performed. This was clear error given that so much of her testimony focused on her fatigue and yet the ALJ spent no time discussing these specific complaints. The ALJ's opinion must be in conformity with 20 C.F.R. § 404.1529 which outlines the necessary steps in evaluating a claimant's symptoms.

 It may be that her fatigue was not so severe as to limit her from continuing to perform her past work. However, that would be mere guess work by this court. The ALJ is obligated to discuss these subjective complaints on some minimal level so as to give this court an indication that these factors were considered. *Dixon,* 270 F.3d at 1176. This court is simply unable to determine whether that was or was not done based upon a close examination of the ALJ's opinion. This becomes even more troubling in light of the fact that Miller was not represented during the hearing and that it appears that the ALJ may have given less attention in developing her subjective complaints of fatigue during that hearing.

Finally, Miller asserts that the ALJ's assignment of ten pound lifting restriction was error. This argument was not specifically raised until Miller's reply brief and would normally be waived. However, given that the ALJ's decision is reversed in light of the failure to address Miller's subjective complaints of fatigue, the court encourages the ALJ to revisit this issue on remand.

### V. CONCLUSION

For the foregoing reasons, the ALJ's decision is **REVERSED** and **REMANDED** for further proceedings not inconsistent with this opinion. **IT IS SO ORDERED.**